IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NXP USA, INC. and NXP B.V., | ) |
| Plaintiffs, | ) |
| v. | ) C.A. NO. _____ |
| IMPINJ, INC., | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

### COMPLAINT

Plaintiffs NXP USA, Inc. and NXP B.V. (collectively "NXP" or "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendant Impinj, Inc. ("Impinj" or "Defendant") and allege as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

### PARTIES

2. Plaintiff NXP USA, Inc. is a Delaware corporation, with a principal place of business at 6501 William Cannon Drive West, Austin, Texas 78735.

3. Plaintiff NXP B.V. is a Netherlands corporation, with a principal place of business at High Tech Campus 60, 5656 AG, Eindhoven, the Netherlands.

4. Impinj is a Delaware corporation with its principal place of business in Seattle, Washington.

### JURISDICTION AND VENUE

5. This action arises under the Patent Laws of the United States, 35 U.S.C. §1 *et seq.*

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Impinj at least because Impinj is incorporated in the State of Delaware. In addition, upon information and belief, Impinj also is subject to this Court's personal jurisdiction because Impinj does business in this forum, including at least a portion of the infringing conduct alleged herein, and regularly does and solicits business and has otherwise committed such purposeful acts and transactions in Delaware such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activities.

8. Venue is proper in this judicial district at least pursuant to 28 U.S.C. § 1400(b). Impinj is a Delaware corporation.

## COUNT I
## INFRINGEMENT OF UNITED STATES PATENT NO. 6,680,523

9. Plaintiffs incorporate Paragraphs 1-8 by reference.

10. On January 20, 2004, United States Patent No. 6,680,523 ("the '523 Patent"), entitled "Semiconductor Wafer With Process Control Modules," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '523 Patent is attached hereto as Exhibit A and incorporated herein by reference.

11. NXP B.V. is the owner of all rights, title, and interest in the '523 Patent.

12. Defendant has directly infringed and continues to directly infringe the '523 Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® 6 family of UHF RFID tag chips. Semiconductor wafers for the Monza® 6 family of UHF RFID tag chips include multiple adjacent exposure fields and process control modules that are arranged in a manner that infringes at least claim 1 of the '523 Patent. As recited by claim 1, the semiconductor wafer has:

a multitude of chips (5), of which chips (5) each one of a given number of chips (5) is situated in one of a multitude of adjacent exposure fields (2),

and

process control modules (4) which are each arranged in a given area on the semiconductor wafer (1), in which the given areas are formed by the exposure fields (2), and in which each process control module (4) takes the place of at least one chip (5).

13. The Monza® R6 wafer, which is representative of a semiconductor wafer for the Monza® 6 family of UHF RFID tag chips, has several dozen reticles (exposure fields), each of which contains over a thousand chips. The Monza® R6 wafer also has process control modules arranged in the corners of exposure fields (areas formed by exposure fields), such that each process control module takes the place of one chip.

14. Defendant's continued infringement of the '523 Patent has damaged and will continue to damage NXP B.V.

## COUNT II
## INFRINGEMENT OF UNITED STATES PATENT NO. 7,456,489

15. Plaintiffs incorporate Paragraphs 1-14 by reference.

16. On November 25, 2008, United States Patent No. 7,456,489 ("the '489 Patent"), entitled "Wafer With Optical Control Modules In IC Fields," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '489 Patent is attached hereto as Exhibit B and incorporated herein by reference.

17. NXP B.V. is the owner of all rights, title, and interest in the '489 Patent.

18. Defendant has directly infringed and continues to directly infringe the '489 Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® 6 family of UHF RFID tag chips. Semiconductor wafers for the Monza®

6 family of UHF RFID tag chips include multiple exposure fields containing control module fields and lattice fields, which are occupied by integrated circuits ("ICs"), with multiple saw paths designed for segregation of the lattice fields and that are configured in a manner that infringes at least claim 1 of the '489 Patent.  As recited by claim 1, the wafer comprises exposure fields:

> wherein in each exposure field at least two control module fields are provided, each of which control module fields runs parallel to the first direction and thus to the first saw paths and contains at least one optical control module, wherein each control module contains a plurality of control module components, and wherein each control module field within an exposure field comprises a plurality of control module field sections and is distributed among several lattice fields, and wherein each control module field section is located in a lattice field and contains at least one control module component.

19.     The Monza® R6 wafer, which is representative of a semiconductor wafer for the Monza® 6 family of UHF RFID tag chips, has several dozen reticles (exposure fields), each of which contains over a thousand lattice fields.  Each lattice field contains an integrated circuit (IC), with each IC containing a plurality of transistors and other electronic components (IC components).  Lattice fields of each Monza® R6 wafer are separated by two sets of saw paths designed for subsequent singulation (segregation) of lattice fields, saw paths of each set running parallel to each other, and two sets running perpendicular to each other.  Each exposure field has two control module fields, parallel to each other and to one of the sets of saw paths.  Each control module field contains at least one optical control module with a plurality of control module components, and a plurality of control module field sections, and is distributed among

several lattice fields.  Each control module field section is located in a lattice field and contains at least one control module component.

20. Defendant's continued infringement of the '489 Patent has damaged and will continue to damage NXP B.V.

## COUNT III
## INFRINGEMENT OF UNITED STATES PATENT NO. 7,538,444

21. Plaintiffs incorporate Paragraphs 1-20 by reference.

22. On May 26, 2009, United States Patent No. 7,538,444 ("the '444 Patent"), entitled "Wafer With Optical Control Modules In Exposure Fields," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '444 Patent is attached hereto as Exhibit C and incorporated herein by reference.

23. NXP B.V. is the owner of all rights, title, and interest in the '444 Patent.

24. Defendant has directly infringed and continues to directly infringe the '444 Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® 6 family of UHF RFID tag chips.  The semiconductor wafer for the Monza® 6 family of UHF RFID tag chips includes multiple exposure fields containing control module fields and lattice fields, which contain integrated circuits, with dicing paths designed for segregation of the lattice fields and configured in a manner that infringes at least claim 1 of the '444 Patent.  As recited by claim 1, the wafer comprises exposure fields:

> wherein in each exposure field at least two control module fields are provided such that the control module fields do not reside in any of the dicing paths, each of which control module fields contains at least one optical control module, and wherein each control module field provided in an exposure field is provided in place of a preset number of lattice fields and wherein the at least two control module fields of each exposure field are

arranged at an average distance from one another extending in the second direction which average distance is equal to at least a quarter of the side length of a side of the exposure field which extends in the second direction

25. The Monza® R6 wafer, which is representative of a semiconductor wafer for the Monza® 6 family of UHF RFID tag chips, has several dozen reticles (exposure fields), each of which contains over a thousand lattice fields.  Each lattice field contains an integrated circuit (IC).  Lattice fields of each Monza® R6 wafer are separated by two sets of dicing paths designed for subsequent singulation (segregation) of lattice fields, with dicing paths of each set running parallel to each other, and two sets running perpendicular to each other.  Each exposure field has two control module fields, which do not reside in any of the dicing paths.  Each control module field contains one optical control module, and is provided in place of one lattice field (a preset number of lattice fields).  Two control module fields are arranged at an average distance in the direction of one set of dicing paths which exceeds a quarter of the length of the exposure field's side which extends in the same direction.

26. Defendant's continued infringement of the '444 Patent has damaged and will continue to damage NXP B.V.

## COUNT IV
## INFRINGEMENT OF UNITED STATES PATENT NO. 8,415,769

27. Plaintiffs incorporate Paragraphs 1-26 by reference.

28. On April 9, 2013, United States Patent No. 8,415,769 ("the '769 Patent"), entitled "Integrated Circuits On A Wafer And Method For Separating Integrated Circuits On A Wafer," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '769 Patent is attached hereto as Exhibit D and incorporated herein by reference.

29. NXP B.V. is the owner of all rights, title, and interest in the '769 Patent.

30. Defendant has directly infringed and continues to directly infringe the '769 Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® 6 family of UHF RFID tag chips.  A semiconductor wafer for the Monza® 6 family of UHF RFID tag chips includes multiple exposure fields containing multiple integrated circuits, which, on information and belief, are formed in layers, including metallization layers, on a silicon substrate, which are separated by saw lines, and with alignment marks arranged in a manner that infringes at least claim 1 of the '769 Patent.  As recited by claim 1, the integrated circuits on the wafer on information and belief comprise:

a plurality of superposed layers formed on the wafer substrate;

a plurality of metallization layers formed on the superposed layers; and

a plurality of alignment marks configured and arranged to align a separating device for separating the integrated circuits on the wafer into individual integrated circuits during a separation step, the alignment marks being formed from the plurality of metallization layers and the plurality of integrated circuits being partially formed from the plurality of metallization layers.

31. Integrated circuits on the Monza® R6 wafer, which is representative of a semiconductor wafer for the Monza® 6 family of UHF RFID tag chips, on information and belief have alignment marks configured and arranged to align a device for singulating (separating) integrated circuits on a wafer into individual integrated circuits during a singulation (separation) step.  On information and belief, these alignment marks are formed from metallization layers, while the integrated circuits are partially formed from the metallization layers.

32.     Defendant's continued infringement of the '769 Patent has damaged and will continue to damage NXP B.V.

## COUNT V
## INFRINGEMENT OF UNITED STATES PATENT NO. 7,795,951

33.     Plaintiffs incorporate Paragraphs 1-32 by reference.

34.     On September 14, 2010, United States Patent No. 7,795,951 ("the '951 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '951 Patent is titled "High-Dynamic Range Low Ripple Voltage Multiplier."  A true and correct copy of the '951 Patent is attached hereto as Exhibit E and incorporated herein by reference.

35.     NXP USA, Inc. is the owner of all rights, title, and interest in the '951 Patent.

36.     Defendant has directly infringed and continues to directly infringe the '951 Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® R6 UHF RFID tag chips.  The infringing products are powered by their proximity to a tag reader's RF field.  As illustrated in the diagram below, the infringing products include Power Management functionality to convert a tag reader's RF field to a voltage that powers the infringing product.



37. The Power Management functionality in the infringing products includes a voltage multiplier that infringes at least claim 1 of the '951 Patent. As recited by claim 1, the voltage multiplier comprises:

> a first clocked multiplier stage having an input and an output;
>
> a second clocked multiplier stage having an input and an output;
>
> an input level regulator having an input coupled to receive a supply voltage, a control input, and an output coupled to the input of the first multiplier stage; and
>
> a feedback bias control circuit coupled to the control input of the input level regulator, wherein the feedback bias control circuit is further coupled to receive the output of the second multiplier stage, and wherein the feedback bias control circuit generates a feedback signal for regulating an output voltage at the output of the input level regulator to a continuous range of voltage levels based on a comparison between a voltage proportional to a voltage at the output of the second clocked multiplier stage and a reference voltage.

38. The Monza® R6 UHF RFID tag chips include a voltage multiplier having a charge pump. The charge pump includes a first clocked charge pump multiplier stage having an input and output and a second clocked charge pump multiplier stage having an input and an output. The voltage multiplier includes an input level regulator that receives a supply voltage and a control input signal. The output of the input level regulator is coupled to the input of the first clocked charge pump multiplier stage. The voltage multiplier further includes a comparator control circuit to provide a feedback signal to the control input of the input level regulator. The comparator is further coupled to receive the output of the second clocked charge pump multiplier stage, and the comparator circuit generates a feedback signal for regulating an output voltage at

the output of the input level regulator to a continuous range of voltage levels based on a comparison between a voltage proportional to a voltage at the output of the second clocked charge pump multiplier stage and a reference voltage.

39. Defendant's continued infringement of the '951 Patent has damaged and will continue to damage NXP USA, Inc.

## COUNT VI
## INFRINGEMENT OF UNITED STATES PATENT NO. 7,257,092

40. Plaintiffs incorporate Paragraphs 1-39 by reference.

41. On August 14, 2007, United States Patent No. 7,257,092 ("the '092 Amtmann Patent") was duly and legally issued by the United States Patent and Trademark Office. The '092 Amtmann Patent is titled "Method Of Communicating Between A Communication Station And At Least One Data Carrier." A true and correct copy of the '092 Amtmann Patent is attached hereto as Exhibit F and incorporated herein by reference.

42. NXP B.V. is the owner of all rights, title, and interest in the '092 Amtmann Patent.

43. Defendant has directly infringed and continues to directly infringe the '092 Amtmann Patent, by making, using, selling, offering for sale, or importing into the United States its products that support a FastID™ inventory mode, including the Monza® family of UHF RFID tag chips, the Indy® family of tag reader modules, and the Speedway® family of tag readers. Impinj's FastID™ inventory mode includes functionality wherein a Monza® UHF RFID tag chip transmits a stored Electronic Product Code (EPC) (identification data) and a stored Tag Identifier (TID) (useful data) together to a tag reader during an inventory procedure.

44. Defendant's Speedway® family of reader products, including the Speedway® R420, Speedway® R220, and Speedway® 120, includes a communication station for

communicating with at least one Monza® UHF RFID tag chip in a FastID™ inventory mode that infringes at least claim 7 of the '092 Amtmann Patent. As recited by claim 7, the communication station is:

> A communication station (1) for communicating with at least one data carrier (2 (DC)), which data carrier (2 (DC)) comprises a characteristic identification data block (IDB) and useful data (UD), which communication station (1) comprises inventorization means (5) for carrying out an inventorization procedure, which inventorization means (5) are designed for carrying out successive procedure runs in an inventorization procedure, and in which inventorization means at least one part of the identification data block (IDB) of the at least one data carrier (2 (DC)) is known after termination of an inventorization procedure, and which communication station (1) comprises processing means (10, 11) for processing specific useful data (n×UDB) included in the at least one data carrier (2 (DC)), transmitted to the communication station (1), and received in the communication station (1), wherein the communication station (1) is designed for processing at least one part of a block region (NKP-IDB) of the identification data block (IDB) of the at least one data carrier (2 (DC)) not yet known in the communication station (1) and, in addition, specific useful data (n×UDB) of the at least one data carrier (2 (DC)) during the implementation of an inventorization procedure.

45.    The Speedway® family of reader products communicate in a FastID™ inventory mode with at least one Monza® UHF RFID tag chip, which stores an Electronic Product Code (EPC) and a Tag Identifier (TID). The Speedway® readers are designed for carrying out successive procedure runs in a FastID™ inventorization procedure, in which at least part of the EPC of the tag chip is known after termination of a FastID™ inventorization procedure. The

Speedway® readers process the TID included in the tag chip, which is transmitted to the Speedway® readers, and received in the Speedway® readers.  The Speedway® readers are designed for processing at least one part of an EPC of the tag chip not yet known in the Speedway® readers and, in addition, the TID of the tag chip during a FastID™ inventorization procedure.

46.     Defendant's Indy® family of reader modules, including the Indy® RS2000, Indy® RS1000, and Indy® RS500, includes a station circuit for a communication station for communicating with at least one Monza® UHF RFID tag chip in a FastID™ inventory mode that infringes at least claim 11 of the '092 Amtmann Patent.  As recited by claim 11, the station circuit is:

> A station circuit (3) for a communication station (1) for communicating with at least one data carrier (2 (DC)), which data carrier (2 (DC)) comprises a characteristic identification data block (IDB) and useful data (UD), which station circuit (3) comprises inventorization means (5) for carrying out an inventorization procedure, which inventorization means (5) are designed for carrying out successive procedure runs in an inventorization procedure, and in which inventorization means at least one part of the identification data block (IDB) of the at least one data carrier (2 (DC)) is known after termination of an inventorization procedure, and which station circuit (3) comprises processing means (10, 11) for processing specific useful data (n×UDB) included in the at least one data carrier (2 (DC)), and transmitted to the station circuit (3), and received in the station circuit (3), wherein the station circuit (3) is designed for processing at least one part of a block region (NKP-IDB), not yet known in the communication station (1), of the identification data block (IDB) of the at least one data carrier (2 (DC)) and, in

addition, the specific useful data (n×UDB) of the at least one data carrier (2 (DC)) during the carrying out of an inventorization procedure.

47. The Indy® family of reader modules include a station circuit for a tag reader to communicate in a FastID™ inventory mode with at least one Monza® UHF RFID tag chip, which stores an Electronic Product Code (EPC) and a Tag Identifier (TID). The Indy® reader modules are designed for carrying out successive procedure runs in a FastID™ inventorization procedure, in which at least part of the EPC of the tag chip is known after termination of a FastID™ inventorization procedure. The Indy® reader modules process the TID included in the tag chip, which is transmitted to the Indy® reader modules, and received in the Indy® reader modules. The Indy® reader modules are designed for processing at least one part of an EPC of the tag chip not yet known in the Indy® reader modules and, in addition, the TID of the tag chip during a FastID™ inventorization procedure.

48. Defendant's Monza® family of UHF RFID tag chips, including the Monza® 6 family, Monza® 5 family, and Monza® 4 family, includes a data carrier circuit for a data carrier for communicating with a communication station in a FastID™ inventory mode that infringes at least claim 19 of the '092 Amtmann Patent. As recited by claim 19, the data carrier circuit is:

> A data carrier circuit (28) for a data carrier (2 (DC)) for communicating with a communication station (1), said data carrier circuit (28) is arranged for storing a characteristic identification data block (IDB) and useful data (UD), and said data carrier circuit (28) is designed for carrying out an inventorization procedure, said inventorization procedure may consist of successive procedure runs and consists of at least one procedure run, and after the inventorization procedure terminates, at least one part of the identification data block (IDB), included in the data carrier circuit (28) after the

identification data block's (IDB) storage, of the data carrier circuit (28) is known in the communication station (1), and which data carrier circuit (28) comprises output means (40, 34, 32) for outputting specific useful data (n×UDB), included in the data carrier circuit (28) after the specific useful data's (n×UDB) storage, to the communication station (1), wherein the data carrier circuit (28) is designed for outputting at least one part of a block region (NKP-IDB), not yet known in the communication station (1), of the identification data block (IDB) of the data carrier circuit (28) included in the data carrier circuit (28) after the identification data block's (IDB) storage and, in addition, specific useful data (n×UDB) of the data carrier circuit included in the data carrier circuit (28) after the specific useful data's storage.

49.     The Monza® family of UHF RFID tag chips include a data carrier circuit for a tag to communicate with a tag reader.  The Monza® tag chips are designed to store an Electronic Product Code (EPC) and a Tag Identifier (TID).  The Monza® tag chips are designed for carrying out a FastID™ inventorization procedure, which may consist of successive procedure runs and consists of at least one procedure run.  After the FastID™ inventorization procedure terminates, at least part of the EPC stored in the tag chip is known in the tag reader.  The Monza® tag chips include functionality for outputting TID data stored in the tag chip to the tag reader.  The Monza® tag chips are designed for outputting at least one part of the EPC stored in the tag chip, not yet known in the tag reader and, in addition, TID data stored in the tag chip.

50.     Defendant's continued infringement of the '092 Amtmann Patent has damaged and will continue to damage NXP B.V.

## COUNT VII
## INFRINGEMENT OF UNITED STATES PATENT NO. 6,819,092

51.     Plaintiffs incorporate Paragraphs 1-50 by reference.

52. On November 16, 2004, United States Patent No. 6,819,092 ("the '092 Bretschneider Patent") was duly and legally issued by the United States Patent and Trademark Office. The '092 Bretschneider Patent is titled "Digitally Switchable Current Source." A true and correct copy of the '092 Bretschneider Patent is attached hereto as Exhibit G and incorporated herein by reference.

53. NXP B.V. is the owner of all rights, title, and interest in the '092 Bretschneider Patent.

54. Defendant has directly infringed and continues to directly infringe the '092 Bretschneider Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® R6 UHF RFID tag chips. The infringing products are powered by their proximity to a tag reader's RF field. As illustrated in the diagram below, the infringing products include Power Management functionality to convert a tag reader's RF field to a voltage that powers the infringing product.



55. The Power Management functionality in the infringing products include a digitally switchable current source that infringes at least claim 1 of the '092 Bretschneider Patent. As recited by claim 1, the digitally switchable current source is:

> characterized in that two switching transistors, which are controllable by means of a digital control signal, are arranged in series with at least two current source transistors which are controllable by means of an analog voltage and are parallel arranged in a branch, wherein current flowing through the source transistors remains constant during state transitions of the digital control signal.

56. The Monza® R6 UHF RFID tag chips include a current source that is digitally switchable. The current source includes two switching transistors, which are controlled by a digital control signal. The two switching transistors are arranged in series with two current source transistors which are controlled by an analog voltage and are parallel arranged in a branch. The current flowing through the current source transistors remains constant during state transitions of the digital control signal.

57. Defendant's continued infringement of the '092 Bretschneider Patent has damaged and will continue to damage NXP B.V.

## COUNT VIII
## INFRINGEMENT OF UNITED STATES PATENT NO. 7,374,097

58. Plaintiffs incorporate Paragraphs 1-57 by reference.

59. On May 20, 2008, United States Patent No. 7,374,097 ("the '097 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '097 Patent is titled "Data Carrier For Storing Information Represented By An Information Voltage." A true and correct copy of the '097 Patent is attached hereto as Exhibit H and incorporated herein by reference.

60. NXP B.V. is the owner of all rights, title, and interest in the '097 Patent.

61. Defendant has directly infringed and continues to directly infringe the '097 Patent by making, using, selling, offering for sale, or importing into the United States products, including the Monza® R6 UHF RFID tag chips. The infringing products are powered by their proximity to a tag reader's RF field. As illustrated in the diagram below, the infringing products include Power Management functionality to convert a tag reader's RF field to a voltage that powers the infringing product.



62. The Power Management functionality in the infringing products includes a circuit for a UHF RFID tag arranged to receive an RF signal from a tag reader. The infringing products further include a capacitor to store information, such as an inventoried flag that is set to one or two values (*e.g.*, A or B), that is represented by the value of a voltage. The infringing products infringe at least claim 4 of the '097 Patent. As recited by claim 4, the circuit for a UHF RFID tag:

> to which circuit the signal can be fed and which circuit is arranged, by using the signal, to generate a supply voltage for parts of the circuit, which circuit comprises storage means

that are arranged to store information capacitively, the information being represented by a value of an information voltage UI arising at the storage means, and which circuit comprises information-voltage generating means that are arranged to receive a control signal, which control signal is of a voltage value that is at most equal to the value of the supply voltage, and that are arranged to generate the information voltage by using the control signal, characterized in that the information-voltage generating means have voltage-raising means that are arranged to raise the value of the voltage of the control signal.

63.     The Monza® R6 UHF RFID tag chips include a circuit for a tag that receives an RF signal from a tag reader.  The signal, which is fed to the Monza® R6 tag chips, is used to generate a supply voltage for parts of the circuit, which includes a capacitor to store information capacitively.  The information is represented by a value of a voltage at the capacitor.  The circuit includes functionality that receives a control signal of a voltage value that is a most equal to the value of the supply voltage, and generates the information voltage by raising the value of the voltage of the control signal.

64.     Defendant's continued infringement of the '097 Patent has damaged and will continue to damage NXP B.V.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court find in their favor and against Defendant, and that the Court grant Plaintiffs the following relief:

(a)     Judgment that one or more of the claims of the patents-in-suit have been infringed by Defendant;

(b)    A preliminary and permanent injunction against Impinj, its officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the patents-in-suit;

(c)    Judgment awarding Plaintiffs damages adequate to compensate them for Defendant's infringement of the patents-in-suit, including all pre-judgment and post-judgment interest;

(d)    Judgment awarding attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise permitted by law;

(e)    Judgment awarding costs; and

(f)    All such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and D. Del. LR 38.1, Plaintiffs demand a trial by jury of this action.

*Of Counsel*:

David L. Witcoff
JONES DAY
77 West Wacker Dr.
Chicago, IL 60601
(312) 782-3939
dlwitcoff@jonesday.com

Dated: October 4, 2019

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
RICHARDS, LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7705
farnan@rlf.com

*Counsel for Plaintiffs*
*NXP USA, INC. and NXP B.V.*