# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NXP USA, INC. and NXP B.V.<br><br>　　　　Plaintiff,<br><br>　v.<br><br>IMPINJ, INC.<br><br>　　　　Defendant. | Civil Action No.: 19-1875-RGA |

## OPENING BRIEF IN SUPPORT OF IMPINJ'S MOTION TO TRANSFER
## TO THE WESTERN DISTRICT OF WASHINGTON UNDER 28 U.S.C. § 1404(a)

*Of Counsel:*

Ramsey M. Al-Salam
RAlsalam@perkinscoie.com
Christina J. McCullough
CMcCullough@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8000

Dated: November 25, 2019

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01511283;v1 }

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................................ 1

STATEMENT OF FACTS ............................................................................................................ 1

ARGUMENT ................................................................................................................................. 3

    I.    NXP Could Have Filed its Claims Against Impinj in the Western District of Washington Originally. .............................................................................................. 3

    II.    The Balance of Factors Favors Transfer to the Western District of Washington. ................................................................................................................ 4

        A.    The Private Interest Factors Favor Transfer to the Western District of Washington. ............................................................................................ 4

            (i)    Factor 1—NXP's Principal Places of Business Are Not in Delaware ............................................................................................... 4

            (ii)    Factor 2—Impinj's Accused RFID Technology is Designed and Developed in Washington ......................................................... 5

            (iii)    Factor 3—Underlying Dispute Did Not Arise in Delaware ........... 6

            (iv)    Factor 4— Party Convenience Favors Washington ....................... 6

            (v)    Factor 5—Witness Convenience Favors Washington ................... 8

            (vi)    Factor 6—Relevant "Books and Records" are Located in Washington ..................................................................................... 9

        B.    The Public Interest Factors Favor Transfer to the Western District of Washington. ............................................................................................ 9

            (i)    Factor 7 is neutral............................................................................ 10

            (ii)    Factor 8—Practical Considerations Favor Washington ............... 10

            (iii)    Factor 9—Court Congestion Favors Transfer.............................. 10

            (iv)    Factor 10—Washington Has a Stronger Local Interest ............... 10

            (v)    Factors 11 and 12 are neutral ........................................................ 11

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*,
  C.A. No. 18-963-CFC, 2019 WL 2745724 (D. Del. July 1, 2019) ........................................... 6

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
  C.A. No. 11-1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013) ......................................... 9

*Impinj, Inc., v. NXP USA, Inc., Case
  No.* 4:19-cv-03161-YGR .......................................................................................................... 2

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017) ................................................................................................ 3

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .............................................................................................. 11

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011) ..................................................................................... 4, 5, 10

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*,
  C.A. No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014) ............................... 5, 6, 8

*Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*,
  C.A. No. 12-1479-GMS, 2013 WL 4496644 (D. Del. Aug. 21, 2013) .................................... 8

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ............................................................................................. 3, 4, 5

*Mitek Sys., Inc. v. United Servs. Automobile Ass'n*,
  C.A. No. 12-462 GMS, 2012 WL 3777423 (D. Del. Aug. 20, 2012) ............................... 3, 5, 7

*Signal Tech, LLC v. Analog Devices, Inc.*,
  2012 WL 1134723, C.A. No. 11-1073-RGA (D. Del. Apr. 3, 2012) ...................................... 10

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc*,
  676 F. Supp. 2d 321 (D. Del. 2009) ....................................................................................... 10

*Wacoh Co. v. Kionix Inc.*,
  845 F. Supp. 2d 597 (D. Del. 2012) ................................................................................... 5, 11

**STATUTES**

28 U.S.C. § 1400(b) ....................................................................................................................... 3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 1404 ................................................................................................................3, 4, 5

28 U.S.C. § 1404(a) ................................................................................................................1, 3

## NATURE AND STAGE OF THE PROCEEDINGS

On October 4, 2019, plaintiffs NXP USA, Inc. and NXP B.V. (collectively, "NXP") filed this lawsuit against Impinj, Inc. ("Impinj"). NXP alleges that Impinj has infringed eight patents belonging to plaintiffs, seven of which are owned by plaintiff NXP B.V. *See* D.I. 1 ("Complaint") at ¶¶ 11, 17, 23, 29, 42, 53, and 60. The Plaintiffs claim infringement based on Impinj's RAIN RFID products, including the Monza® R6 integrated circuit ("IC"), and the wafers from which such products are made. *See id.* at ¶¶ 9-64.

## SUMMARY OF THE ARGUMENT

1. This case should be transferred to the Western District of Washington at Seattle for the convenience of the parties and non-parties. None of the parties is based in this District, or even has an office in this District. Seven of the eight asserted patents are owned by plaintiff NXP B.V., which is based in the Netherlands. The remaining patent is owned by NXP USA, Inc., which is based in Austin, Texas. In contrast, Impinj is based in Seattle, and has its only office there. To Impinj's knowledge, there are no witnesses or potential witnesses in this District. NXP's infringement allegations are directed to Impinj's integrated circuits, which are designed, marketed and sold by individuals located near Seattle. The wafers from which those products are made are produced in Taiwan or California. All relevant evidence relating to the accused integrated circuits is located in the Western District of Washington. Thus, the relevant factors for transferring a civil action based on convenience under 28 U.S.C. § 1404(a) strongly favor transferring this suit to the Western District of Washington. As a matter of convenience to the witnesses and both parties, this case should be transferred to the Western District of Washington.

## STATEMENT OF FACTS

This case is a retaliatory lawsuit for an infringement case filed by Impinj. Impinj and NXP are competitors in the RAIN RFID (Radio Frequency IDentification) integrated circuits market.

*See* Declaration of Yukio Morikubo ("Morikubo Decl.") at ¶ 3.  Impinj filed suit against NXP in the Northern District of California, asserting that NXP has copied Impinj's RAIN RFID integrated circuits and infringed twenty-six Impinj patents.  *See Impinj, Inc., v. NXP USA, Inc.,* Case No. 4:19-cv-03161-YGR; Morikubo Decl. at ¶ 4.  Approximately four months later, NXP filed this suit against Impinj, alleging that Impinj infringes eight of NXP's patents.  Impinj has not yet filed its Answer to the Complaint.

Impinj is a relatively small company with only one office, located in Seattle, Washington.  Morikubo Decl. at ¶ 5.  Impinj has approximately 250 employees, and Impinj's products are designed and developed in the Seattle area where all of its engineers are located.  *Id.* at ¶¶ 5, 6.  Material witnesses that will likely testify include Chris Diorio, CEO, Vice Chair and co-founder of Impinj, Jeff Dossett, EVP Sales & Marketing, and Hussein Mecklai, EVP Engineering.  *Id.* at ¶ 6.  They all reside in the Seattle area.  *Id.*  Similarly, Impinj's current and former engineers, including John Hyde, John Quist, Charles Peach, and Theron Stanford, all live in the Pacific Northwest.  *Id.*  Any technical, marketing, and sales documents relating to Impinj's products are located in or accessible from the Seattle facility.  *See id.*  And Impinj's products are manufactured in California or Taiwan, which are substantially farther away from Delaware than Seattle.  *Id.* at ¶ 7.

Plaintiffs, on the other hand, are very large by comparison.  Upon information and belief, Plaintiffs and their affiliates have approximately 30,000 employees and in 2018 had approximately $9.4 billion in annual revenues.  *Id.* at ¶ 5.  Plaintiffs do not appear to have any offices or witnesses in this District.  Plaintiff NXP USA is based in Austin, Texas, and Plaintiff NXP B.V. is based in the Netherlands.  Impinj is aware of no relevant witnesses or evidence located in Delaware.  *See id.* at ¶¶ 2, 8.

## **ARGUMENT**

Impinj respectfully submits that the Court should exercise its discretion under 28 U.S.C. § 1404(a) and transfer this case to the Western District of Washington. Although Impinj is a Delaware corporation, its sole place of business is located in Seattle, Washington. Morikubo Decl. at ¶ 2, 5. The current suit presents a textbook scenario for transfer under the § 1404 factors.

A district court has "broad discretion to determine, on an individualized, case-by-case basis, whether the convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). Here, considerations for the witnesses and the location of relevant evidence weigh substantially in favor of litigating the claims in the Western District of Washington.

### I.  NXP Could Have Filed its Claims Against Impinj in the Western District of Washington Originally.

A § 1404(a) determination is considered in two stages. First, the Court determines whether the action could have been brought in the proposed transferee forum. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). If so, the Court considers whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Mitek Sys., Inc. v. United Servs. Automobile Ass'n*, C.A. No. 12-462 GMS, 2012 WL 3777423, at *4 (D. Del. Aug. 20, 2012) (granting a motion to transfer to the Western District of Texas where the defendant was headquartered).

NXP could have filed this action in the Western District of Washington. Impinj is headquartered in Seattle, Washington, which is in the Western District of Washington, and meets the requirements of a "regular and established place of business" for purposes of § 1400(b). *See In re*

*Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The Western District of Washington is thus a "district . . . in which" this action "[could] have been brought." 28 U.S.C. § 1404.

## II. The Balance of Factors Favors Transfer to the Western District of Washington.

In the Third Circuit, courts consider the following private interest factors in deciding whether to transfer a case under § 1404(a): (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records. *See Jumara*, 55 F.3d at 879. Courts also consider the following public interest factors: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80 (citations omitted and numbering added).

The balance of factors in this case warrants transfer to the Western District of Washington. Each of factors (2)-(6) and (8)-(10) weighs in favor of transfer, and factors (7), (11), and (12) are neutral. Only factor (1) weighs against transfer, and in reality, only slightly.

### A. The Private Interest Factors Favor Transfer to the Western District of Washington.

#### (i) Factor 1—NXP's Principal Places of Business Are Not in Delaware

Although the Third Circuit credits a plaintiff's choice of forum, "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Neither of the NXP plaintiffs are headquartered in Delaware. NXP USA has its principal place of business in Austin, Texas and NXP B.V. is located in Eindhoven, the Netherlands. D.I. 1 at ¶¶ 2-3. While

NXP USA is incorporated in Delaware, "[n]either § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry." *Link_A_Media*, 662 F.3d at 1224.

Further, the Plaintiff's choice of forum should be given little weight because NXP B.V. is the primary plaintiff and is a foreign corporation. Seven out of the eight asserted patents are owned by NXP B.V., which is a Netherlands' corporation and the parent of NXP USA. Although NXP has offices in other areas, this case is predominately a dispute between a foreign plaintiff and a Delaware corporation that has no contacts with the state. Thus, Plaintiff's choice of forum should be given little weight. *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597 (D. Del. 2012) (granting a motion to transfer to the defendants' respective districts as the plaintiff was a Japanese corporation and "the only connection to Delaware . . . [was] that it [was] plaintiff's choice of forum . . . and that the defendants [were] Delaware corporations, which is not a dispositive factor."); *Mitek Sys.*, 2012 WL 3777423, at *5 ("the fact that Delaware is not home to Mitek's principal place of business reduces somewhat the weight this factor is accorded). Because Factor 1 weighs only slightly against transfer, the remaining factors, all of which favor transfer or are neutral, outweigh it.

### (ii) Factor 2—Impinj's Accused RFID Technology is Designed and Developed in Washington

Impinj seeks transfer to the Western District of Washington because that is where Impinj "operates its principal place of business and headquarters." *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027, at *3 (D. Del. Sept. 25, 2014). NXP's claims against Impinj are directed solely to integrated circuits that are designed and developed in Seattle. Complaint at ¶¶ 9-64; Morikubo Decl. at ¶ 5. All of Impinj's knowledgeable witnesses and documents are located in the greater Seattle area. Impinj's request to transfer the claims to the Western

District of Washington is reasonable given there is no evidence in Delaware, and effectively all of the evidence relating to the accused products is in Seattle. Factor 2 favors transfer.

### (iii) Factor 3—Underlying Dispute Did Not Arise in Delaware

Courts in this District have "recognized that to some extent, infringement claims arise where the allegedly infringing products are designed and manufactured." *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027, at *3 (D. Del. Sept. 25, 2014) (granting a motion to transfer to Washington where the products were developed and marketed). In this case, the design and development efforts for the accused products have always been centered in Seattle. None of Impinj's "research and development efforts associated with the products accused of infringing Plaintiff's patent occurred in [Delaware]." *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, C.A. No. 18-963-CFC, 2019 WL 2745724, at *4 (D. Del. July 1, 2019) (granting a motion to transfer to the District of Utah where the claims arose). Impinj's products are also not manufactured in or around Delaware. Instead, Impinj's products are manufactured by foundries in either California or Taiwan. Morikubo Decl. at ¶ 7. To the extent witnesses from those foundries need to testify, Seattle is closer and more convenient than Delaware. Because the actions related to NXP's allegations occurred in or closer to Seattle than Delaware, Factor 3 favors transfer.

### (iv) Factor 4— Party Convenience Favors Washington

In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek*, 2012 WL 3777423, at *6. Applied to the circumstances of this case, those considerations confirm that the Western District of Washington is the significantly more convenient forum.

Impinj has no witnesses, design facilities, or records in Delaware. Morikubo Decl. at ¶ 6. Instead, all of Impinj's witnesses are located in Seattle, near Impinj's headquarters. Impinj's officers and employees, such as Chris Diorio, CEO, and Hussein Mecklai, EVP Engineering, would be significantly inconvenienced if they have to attend hearings, depositions or trials in Delaware. And Impinj itself would face greater disruption to its operations if engineers such as John Hyde, John Quist, and Theron Stanford have to travel to Delaware to testify. Impinj is a small company with roughly 250 employees, and the employees knowledgeable about the accused integrated circuits are crucial to the company's operations. Transferring venue to the Western District of Washington would substantially improve convenience and significantly reduce the operational and travel expense of defending this case for Impinj, especially given that its lead counsel is also located in Seattle, Washington. Declaration of Ramsey M. Al-Salam ("Al-Salam Decl.") at ¶ 2. Further, under this Court's standard scheduling order, if Impinj files a counterclaim, even one simply for a declaratory judgment, NXP can demand that its witnesses be produced in Delaware.

Importantly, transferring venue would not materially inconvenience NXP. NXP B.V., which owns seven of the eight patents asserted, has its principal place of business in the Netherlands. Seattle is not materially less convenient than this District for flights from the Netherlands. NXP USA is based in Austin, Texas, which is equally close to Seattle as to Delaware: travel from Austin to either Seattle or Delaware requires between a three and five-hour plane ride. Al-Salam Decl. at ¶ 4. NXP and its affiliates are also significantly larger than Impinj with approximately 30,000 employees, Morikubo Decl. at ¶ 5, and would therefore suffer less of an operational impact if an NXP employee has to travel for litigation. Further, none of the named inventors on the patents resides in Delaware. Only one, Jon Choy, resides in the United States, in Austin, Texas, *see* U.S. Patent No. 7,795,951, which, as explained earlier, is equally close to Seattle as to Delaware. For

the foreign inventors, "[i]t is equally inconvenient for the foreign parties and witnesses . . . to litigate anywhere in the United States." *Ithaca Ventures*, 2014 WL 4829027 at *4. Lastly, NXP's lead trial counsel, Jones Day, is not located in Delaware.

"It is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties." *Ithaca Ventures*, 2014 WL 4829027 at *4. Because the Western District of Washington would be significantly more convenient for Impinj and its witnesses than Delaware, and would be equally convenient for NXP, Factor 4 favors transfer.

### (v) Factor 5—Witness Convenience Favors Washington

Seattle will also be more convenient for most, if not all, of the witnesses. Impinj will rely heavily on its current employees as witnesses, including those identified above. All of such witnesses reside in the Seattle area. Impinj will also likely rely on former employees such as Charles Peach who also resides in the Seattle area. To the extent other former Impinj employees are witnesses, they also likely reside in the Seattle area, and are unlikely to want to travel to Delaware to testify. *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, C.A. No. 12-1479-GMS, 2013 WL 4496644, at *6 (D. Del. Aug. 21, 2013) (the fact that a likely witness resides beyond the court's subpoena power, and is a former employee of a party, provides a reason to believe that the witness may decline to testify). The past and present design and engineering employees are likely to be the most important fact witnesses regarding NXP's allegations of infringement and Impinj's non-infringement defenses. They will also be important regarding damages issues focused on customer usage and demand (or lack thereof) for the allegedly infringing features of the accused products. The ability to limit their travel to within the Western District of Washington, and thus within their own state, makes it more likely that these former employee witnesses will be available at trial.

Factor 5 favors transfer.

### (vi) Factor 6—Relevant "Books and Records" are Located in Washington

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, C.A. No. 11-1050-GMS, 2013 WL 828220, at *6 (D. Del. Mar. 6, 2013). The Western District of Washington provides greater access to the relevant evidence as it is home to the relevant evidence. Impinj is headquartered in Seattle and is within the Western District. Impinj's relevant documentary evidence, such as sales and marketing materials; marketing strategy reports; designs, development, testing, and other technical documents relating to the accused products and relevant prior art systems; manufacturing documents; and customer technical requirements documents are stored at its Seattle location. Morikubo Decl. ¶ 6.

Impinj's chips were designed and developed at Impinj's headquarters in Seattle. *Id.* Early versions of the accused products which are relevant prior art to NXP's patents, also were designed and developed at Impinj's Seattle headquarters. Information regarding the manufacturing process for Impinj's chips is substantially closer to Seattle than Delaware, as manufacturing is performed by third-parties in California and Taiwan. Morikubo Decl. at ¶ 8.

Thus, evidence relating to how the accused products are developed, manufactured, and operate is in Seattle, or far closer to Seattle than Delaware, as are Impinj's financial, marketing and usage records. NXP has failed to identify any discernable records in Delaware. The court "cannot simply ignore the location of the relevant books and records." *Link_A_Media*, 662 F.3d at 1224. Factor 6 weighs in favor of transfer.

### B. The Public Interest Factors Favor Transfer to the Western District of Washington.

### (i)     Factor 7 is neutral

There is no concern about enforceability of a judgment in this case.  Factor 7 is neutral.

### (ii)    Factor 8—Practical Considerations Favor Washington

Delaware is thousands of miles away from the parties and witnesses.  Transferring the case to the Western District of Washington will minimize travel and extended time away from family and work for Impinj employees, non-parties, and prior art witnesses.  "With regard to practical considerations that could make the trial easy, expeditious or inexpensive, these strongly favor transfer because key witnesses and documents are located in the [transferee venue] and are easier to access there than in Delaware."  *Teleconference Sys. v. Proctor & Gamble Pharm., Inc*, 676 F. Supp. 2d 321, 335 (D. Del. 2009).  Transferring the case would also be more convenient for at least Impinj's lead counsel who are located in Seattle, Washington.  *See Signal Tech, LLC v. Analog Devices, Inc.*, 2012 WL 1134723, C.A. No. 11-1073-RGA, at *4 (D. Del. Apr. 3, 2012) (factoring in convenience for counsel to litigate in the transfer court).  Factor 8 favors transfer.

### (iii)   Factor 9—Court Congestion Favors Transfer

This Court's docket is significantly more congested than the Western District of Washington.  Currently, the District of Delaware has approximately 1,045 open patent cases compared to only 39 open patent cases pending in the Western District of Washington.  Al-Salam Dec. at ¶ 3.  And with regard to the time to trial, so far in 2019, the District of Delaware's median time to trial from the filing of the complaint for civil matters is 32.5 months, compared to the Western District of Washington's substantially lower 19.3 months.  *Id.* at ¶ 3.  Given the comparatively faster time in which this case can be litigated in the Western District of Washington, Factor 9 favors transfer.

### (iv)    Factor 10—Washington Has a Stronger Local Interest

"While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the

events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Delaware has no discernable local interest in this case, as none of the parties and no witnesses or other evidence are located here. The fact that NXP B.V., the parent company in this case and primary plaintiff, is a Dutch company, diminishes any "local controversy" that Delaware might possibly have. *See Wacoh*, 845 F. Supp. at 604. On the other hand, Impinj is headquartered in Seattle, within the Western District of Washington, and employs hundreds of people from within that district. As between the two venues, this case has a strong connection to the Western District of Washington and seemingly none to Delaware. Factor 10 weighs in favor of transfer.

### (v) Factors 11 and 12 are neutral

The public policy factor 11 is neutral between Delaware and the Western District of Washington, and this is not a diversity case. Therefore, factor 12 is neutral.

## CONCLUSION

For the reasons discussed above, Impinj respectfully requests that the Court transfer this case to the Western District of Washington.

*Of Counsel:*

Ramsey M. Al-Salam
RAlsalam@perkinscoie.com
Christina J. McCullough
CMcCullough@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8000

Dated: November 25, 2019

ASHBY & GEDDES

*/s/ Steven J. Balick*
_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*